A00A1363, A00A1364. VALLEY PLACE, LTD. v. T. I. EQUITY FUND (1995), L.P.; and vice versa.

(541 SE2d 37)

MILLER, Judge.

Valley Place, Ltd. sued T. I. Equity Fund (1995), L.P. to recover the balance it claims was due on a promissory note for the sale of real estate. Valley Place agreed to sell T. I. an apartment complex consisting of 250 apartments. After the execution of the contract but before closing, the parties discovered that the property was zoned for only 244 apartments. The parties modified the warranties and representations section of the contract to include the acknowledgment that the property was not properly zoned and that Valley Place agreed to "promptly apply for and pursue" rezoning. The parties then agreed to go forward with the transaction, and at closing on December 2, 1996, T. I. executed a promissory note (the "Note") in the amount of $625,000 that was to mature one year later. The Note outlined T. I.'s remedy in the event that Valley Place failed to obtain the necessary zoning.

When Valley Place failed to obtain the necessary zoning by December 2, 1997, T. I. offset the amount due by $172,000 pursuant to the terms of the Note and tendered $109,250 as payment in full.[1] Valley Place sued to recover the $172,000, and both parties moved for summary judgment. The trial court granted T. I.'s motion for summary judgment while denying Valley Place's motion. Valley Place appeals this judgment in Case No. A00A1363. The court also denied T. I.'s motion to set up its counterclaim by leave of court, which order T. I. cross-appeals in Case No. A00A1364.

The standard applicable to motions for summary judgment is announced in *Lau's Corp. v. Haskins,*[2] and when reviewing the grant or denial of such motion, this court conducts a de novo review of the

---

[1] Valley Place's zoning request was subsequently granted on December 4, 1997.

[2] 261 Ga. 491 (405 SE2d 474) (1991).

law and the evidence.[3]

## Case No. A00A1363

1. Valley Place contends that the trial court erred in denying its motion for summary judgment and in granting summary judgment to T. I., specifically because T. I. was not entitled to an offset.

The certificate of warranties and representations provided that:

Seller now acknowledges and represents that the Property, as defined in the Sales Contract, is not properly zoned for its present use due to a violation of the density requirements and a lack of required parking spaces and Seller has agreed to promptly apply for and pursue, at Seller's expense, a rezoning of the Property to a zoning classification that will allow for the use and occupancy of the Property as a 250 unit apartment complex. . . .

The Note provided:

In addition to the right of Maker to offset obligations owed to Valley Place Apartments, LLC as described above, Maker shall, as its sole and exclusive remedy for density and parking zoning violations, have the right to offset the amount of $172,000.00 from the principal balance hereof in the event that Holder fails to deliver to Maker, prior to the maturity date hereof, evidence of the final rezoning (to include the running of any appeal periods) of the property known as Valley Place Apartments . . . to allow for the use and occupancy of the Valley Place Apartments as a 250 unit apartment complex. . . . The amount of $172,000 is a reasonable estimate of Maker's damages in the event that the rezoning is not received, actual damages being impossible to ascertain and is not intended as a penalty or forfeiture.

Valley Place contends that the Note provides that $172,000 was to be offset only if two events occur: (1) Valley Place breaches its obligations regarding density and parking zoning violations under the representations and warranties section of the sales contract, and (2) Valley Place fails to deliver to T. I., prior to the maturity date of the Note, evidence of final rezoning of the property allowing for all 250 units. Valley Place argues that both of these contingencies must occur to give rise to damages, and that it performed its obligations

---

[3] *Young v. Turner Heritage Homes*, 241 Ga. App. 400, 401 (1) (526 SE2d 82) (1999).

under the first requirement.

Valley Place misinterprets the plain language of the Note. Regardless of whether Valley Place promptly pursued rezoning, the Note clearly requires rezoning to be acquired and evidence thereof to be delivered to T. I. by December 2, 1997. Therefore, contrary to Valley Place's assertion, the failure to acquire and document rezoning alone gives rise to the contractual right of offset.

Valley Place next argues that it was excused from performance of its obligation as it was unable to timely obtain rezoning due to an "act of God." OCGA § 13-4-21 provides that "[i]f performance of the terms of a contract becomes impossible as a result of an act of God, such impossibility shall excuse nonperformance, except where, by proper prudence, such impossibility might have been avoided by the promisor." And OCGA § 1-3-3 (3) defines an "Act of God" as an "accident produced by physical causes which are irresistible or inevitable, such as lightning, storms, perils of the sea, earthquakes, inundations, sudden death or illness. This expression excludes all idea of human agency."

Tom Williams, Valley Place's general partner, deposed that his first effort in January 1997 to obtain rezoning was unsuccessful, and that in March or April 1997 he learned that in order to get the rezoning, he had to get a land use change. Williams further stated that due to surgery he was incapacitated from June 10 to early July, and as a result he did not reapply for a land use change or a zoning change until July or August.

Although Williams' surgery caused him to be unable to pursue the rezoning for a few weeks between June and July, such nonperformance could have been avoided. Valley Place had one year to acquire the proper zoning and failed in its first attempt. Moreover, although Williams testified that land use changes are heard only in July and December, he was aware of his health problems in February and aware of the land use requirement in March or April. Valley Place and Williams could have taken other measures to assure that the second zoning application was timely filed.[4] For example, Valley Place could have hired or contracted with someone else to fulfill the duty, or Williams could have begun the second application process earlier.

2. Valley Place also argues that the damage provision of the Note constitutes an unenforceable penalty and that it does not pass the three-prong test set forth in *Southeastern Land Fund v. Real Estate*

---

[4] The trial court rejected Valley Place's "act of God" argument and based its ruling on the fact that there was no showing in the record that other employees of Valley Place were incapable of obtaining the required zoning. Williams testified, however, that there was no other employee capable of handling zoning issues. This became an issue of fact.

*World.*[5] To determine whether a contract provision is enforceable as liquidated damages, the following factors must be present:

> First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the probable loss.[6]

"[T]he enforceability of a liquidated-damages provision in a contract is a question of law for the court."[7] And the burden is on Valley Place, the defaulting party, to show the provision is a penalty.[8] Margaret Soens, the managing director of T. I., stated in her deposition that neither party knew what the damages would be if the rezoning were not acquired, but that T. I. risked losing six apartment units. She further explained that the $172,000 was calculated by reducing "the purchase price by six units." Williams also explained that it was hard to figure out what the loss would be if rezoning were not acquired, and that the $172,000 was calculated "by taking the price that was paid per apartment, arriving at the average price per apartment and multiplying it by the number of apartments, six."

The damages clause in the Note here meets all three requirements of *Southeastern Land Fund.* The undisputed evidence shows that the parties could not easily calculate the damages that would result from the failure to acquire the proper zoning.[9] We also hold that the clause was intended to provide damages and not to penalize Valley Place for its failure to obtain rezoning. The Note does not use the term "liquidated," but the language used is that of a liquidated damages clause.[10] And the Note does state that the provision is not intended to be a penalty. Finally, a reduction in the purchase price was indeed a reasonable preestimate of the probable loss as T. I. would not have the use of six apartments.[11] Therefore, Valley Place

---

[5] 237 Ga. 227 (227 SE2d 340) (1976).

[6] (Citations and punctuation omitted.) Id. at 230.

[7] (Citation omitted.) *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.,* 258 Ga. 808, 809 (375 SE2d 222) (1989).

[8] *Oasis Goodtime Emporium I v. Cambridge Capital Group,* 234 Ga. App. 641, 644 (4) (507 SE2d 823) (1998).

[9] See *Swan Kang, Inc. v. Kang,* 243 Ga. App. 684, 686 (1) (534 SE2d 145) (2000).

[10] See OCGA § 13-6-7: "If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby."

[11] Compare *Manning & Assoc. Personnel v. Trizec Properties,* 212 Ga. App. 600, 602 (2) (442 SE2d 783) (1994) (where measure of damages is not equivalent to "landlord's costs" under a lease, sum stipulated is not reasonable preestimate of probable loss resulting from breach); *Roswell Properties v. Salle,* 208 Ga. App. 202, 206 (3) (430 SE2d 404) (1993) (clause drafted in terms of forfeiting an unspecified sum of earnest money was unenforceable).

cannot show that the liquidated damages clause is an unenforceable penalty.[12]

The trial court did not err in granting summary judgment to T. I. and in denying Valley Place's motion for summary judgment.

## Case No. A00A1364

T. I. argues that the court erred in denying its motion for leave to set up its counterclaim by amendment pursuant to OCGA § 9-11-13 (f). In the motion, T. I. argued that due to an error in calculation, it overpaid Valley Place in the amount of $22,929.[13] T. I. filed its answer to Valley Place's complaint on August 27, 1998, the error was allegedly discovered by T. I. on December 2, 1998, and the motion to amend was filed on December 16, 1998. OCGA § 9-11-13 (f) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." "[W]hether to allow such a filing even after the requisite showing is made is within the discretion of the trial court and will not be disturbed absent abuse."[14]

The trial court concluded that T. I. knew or should have known of the alleged overpayment at the time of filing the defensive pleading and that such delay is not excusable. Although a miscalculation in interest is not something that T. I. necessarily should have known at the time its defensive pleading was filed, the mistake was discoverable before the passage of almost four months between the defensive pleading and the motion to amend including the fourteen days (ten working days) it took T. I. to file the counterclaim once the error was discovered. Therefore, we discern no abuse in the denial of T. I.'s motion to add its counterclaim.

*Judgments affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 13, 2000.

*Gerry, Friend & Sapronov, William D. Friend, John W. Sandifer,* for appellant.

---

[12] Valley Place argues that the Note provides for liquidated damages as well as actual damages and that therefore the liquidated damages portion is unenforceable. The clause relating to density and parking zoning violations, however, clearly provides that the $172,000 offset is the sole and exclusive remedy.

[13] T. I. claims that due to a miscalculation in interest it incorrectly paid Valley Place $109,250 instead of $86,321 resulting in an overpayment of $22,929. Soens deposed that the miscalculation arose from T. I.'s failure to take into consideration a payment of $400,000 T. I. made in September 1997.

[14] (Citation omitted.) *Hovendick v. Presidential Financial Corp.*, 230 Ga. App. 502, 506 (6) (497 SE2d 269) (1998).

*Welch, Spell, Reemsnyder, Pless & Davis, Leroy P. Spell, Jr., Laura M. Lanzisera*, for appellee.